IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54548-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JOSEPH S. PAZ ALVAREZ | |
| Appellant. | |

WORSWICK, J. — Joseph Paz Alvarez appeals his conviction and sentence for attempted indecent liberties by forcible compulsion and attempted first degree rape of a child.  He argues that (1) his convictions violate the rule against double jeopardy, (2) the prosecutor committed prosecutorial misconduct, (3) three of his community custody conditions are not crime-related and are unconstitutionally vague, and (4) the trial court erred when it imposed a Department of Corrections (DOC) supervision legal financial obligation (LFO) after stating it would impose only mandatory LFOs.  We hold that (1) Paz Alvarez's convictions do not violate the rule against double jeopardy and (2) there was no prosecutorial misconduct.  Regarding (3) his community custody conditions, we hold that each is crime-related.  However, we hold that the condition requiring Paz Alvarez obtain approval of a sexual deviancy treatment provider before he enters a sexual relationship is unconstitutionally vague, and remand another of the conditions to correct an error.  Finally, we hold that (4) the trial court inadvertently imposed the DOC supervision fee.

Accordingly, we affirm in part and remand to correct the community custody provisions and strike the DOC supervision fee.

## FACTS

On June 8, 2018, Paz Alvarez, then aged 32, approached JB and his daughter, ZB, then eight years old, in a Walmart store in Shelton. While JB and ZB were walking down an aisle, Paz Alvarez ran up and "bear-hugged" ZB from behind. Verbatim Report of Proceedings (VRP) at 121-22. Paz Alvarez placed ZB on the ground and straddled her. Paz Alvarez forcibly pulled down her pants and underwear. JB pushed Paz Alvarez off of ZB and covered her up. When Paz Alvarez stood, JB saw that Paz Alvarez's penis was exposed. Paz Alvarez told JB that he should let him have sex with ZB because "she's so hot." VRP at 125.

A crowd gathered and a Walmart employee heard Paz Alvarez state, "You have daughters, you should give me one." VRP at 163. Walmart employees surrounded Paz Alvarez until a police officer arrived and arrested him.

The State charged Paz Alvarez with one count of attempted indecent liberties by forcible compulsion and one count of attempted first degree rape of a child. The case proceeded to trial in June 2019. Witnesses testified as above. During closing arguments, the State emphasized why the jury should believe JB's account of the crime after Paz Alvarez cast doubt on JB's credibility. The prosecutor stated:

> So, we're not supposed to believe [JB] because he was traumatized. That means that he did not see the defendant pull the pants and underwear off his child? That's what he's saying? That because he was traumatized he didn't see this? Or that he's making it up that it happened? No. It happened. I don't care whether he was traumatized or not, it happened. He watched it happen.

VRP at 218, as corrected Feb. 5, 2021.[1]

The jury found Paz Alvarez guilty of both crimes. Before sentencing, in November 2019, a psychologist conducted a psychosexual evaluation on Paz Alvarez. The evaluation states, "The purpose of the evaluation was to assess [Paz Alvarez's] potential for sexual deviance and make treatment recommendations if appropriate." Supp. Clerk's Papers (CP) at 111. The psychologist determined that Paz Alvarez's crime did not appear to be "representative of an ongoing pattern of deviant sexual attraction or impulses directed towards prepubescent female children." Supp. CP at 133. The evaluation concluded that Paz Alvarez "does not meet the diagnostic criteria for Pedophilic Disorder." Supp. CP at 133. However, it also stated, "[Paz Alvarez] meets the diagnostic criteria for . . . diagnosis of Delusional Disorder" and that he had an underlying psychotic disorder exacerbated by inhalant abuse.[2] Supp. CP at 131-33.

In December, the trial court sentenced Paz Alvarez to 47 months for attempted indecent liberties and 86 months for attempted rape. The trial court found Paz Alvarez indigent. The court stated,

---

[1] The original Verbatim Report of Proceedings was submitted to us in June 2020. *See* VRP at 1. In the original submission, page 218 of the VRP records the prosecutor stating, "I care whether he was traumatized or not." In February 2021, an updated VRP was submitted correcting page 218 to read that the prosecutor stated, "I *don't* care . . . ."

[2] Paz Alvarez described ongoing delusions of "external mind control." Supp. CP at 130. The psychologist noted that it was "not clear that [Paz Alvarez's] behavior was sexually motivated in the usual sense." Supp. CP at 133. The report went on to recommend, "If possible, he should be placed in a setting that specializes in treatment of mentally ill offenders. . . . His compliance with recommended psychiatric treatment should be a consideration in any future community risk management decisions." Supp. CP at 134.

With regard to legal financial obligations, based upon the presentence investigation the Court's going to find that Mr. Paz Alvarez does not have the present ability, and in all likelihood, near future ability to meet his legal financial obligations, will only impose the mandatory $500 crime victims fee, the $100 DNA fee.

VRP at 254. As part of the community placement conditions, however, the trial court ordered

Paz Alvarez to "[p]ay supervision fees as determined by the Department of Corrections." CP at

98.

The trial court also imposed several community custody conditions, including the

following:

4. Within 30 days of release from confinement (or sentencing, if no confinement is ordered) obtain a sexual deviancy evaluation with a State certified therapist approved by your Community Corrections Officer (CCO) and follow through with all recommendations of the evaluator. Should sexual deviancy treatment be recommended, enter treatment and abide by all programming rules, regulations and requirements. Attend all treatment-related appointments (unless excused); follow all requirements, conditions, and instructions related to the recommended evaluation/counseling; sign all necessary releases of information; and enter and complete the recommended programming

5. Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.

. . . .

10. Do not purchase, possess, use, access or view any sexually explicit material that are intended for sexual gratification. This includes, but is not limited to, material which shows genitals, bodily excretory behavior that appears to be sexual in nature, physical stimulation of unclothed genitals, masturbation, sodomy (i.e., bestiality, or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of human genitals. Works of art or of anthropological significance are not considered sexually explicit material unless given prior approval by your sexual deviancy provider.

. . . .

18. Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

CP at 99-100.

Paz Alvarez appeals his convictions and sentence.

ANALYSIS

Paz Alvarez argues that his convictions violate the rule against double jeopardy. Next, he argues that prosecutorial misconduct denied him a fair trial and that his trial counsel was ineffective. He further argues that community custody conditions 5, 10, and 18 were not crime-related and are unconstitutional. Finally, he argues that the trial court erred when it entered the DOC supervision fee because he is indigent and the trial court stated that it would impose only mandatory LFOs. We hold that condition 5 is unconstitutionally vague and agree that the trial court erred when it entered the DOC supervision fee. Paz Alvarez's remaining arguments fail.

I. DOUBLE JEOPARDY

Paz Alvarez argues that his convictions for attempted indecent liberties by forcible compulsion and attempted first degree rape of a child violate the prohibition against double jeopardy. He argues that because both crimes were crimes of attempt, the substantial step taken in each was the same: pulling down ZB's pants. Thus, he argues that the crimes constitute the same offense. We disagree.[3]

---

[3] In his reply brief, Paz Alvarez cites to *In re Det. of Cross,* 99 Wn.2d 373, 379, 662 P.2d 828 (1983), to argue that the State failed to respond with the "correct analysis," thus, this is a concession that his analysis is correct. This argument fails.

We review double jeopardy claims de novo as a question of law. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). The double jeopardy principles bar multiple punishments for the same offense. *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007); U.S. CONST. amend. V; WASH. CONST. art. I, § 9. Where the defendant's conduct supports charges under two statutes, we must determine whether the legislature intended to authorize multiple punishments for those crimes. *Borrero*, 161 Wn.2d at 536. Double jeopardy is not offended where the legislature intended cumulative punishment for the multiple crimes. *Borrero*, 161 Wn.2d at 536. "[T]he mere fact that the same *conduct* is used to prove each crime is not dispositive." *Freeman*, 153 Wn.2d at 776. Offenses are not the same where each offense contains an element not contained in the other. *Borrero*, 161 Wn.2d at 537.

We presume that the crimes are not the same offense for double jeopardy purposes where each crime contains an element the other does not. *Freeman*, 153 Wn.2d at 772. This presumption may be rebutted by evidence of legislative intent to the contrary. 153 Wn.2d at 772. "'[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 817, 100 P.3d 291 (2004), *as amended on denial of reconsideration* (Jan. 20, 2005).

Under RCW 9A.28.020(1), "[a] person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." Our Supreme Court has explained that "substantial step" has no meaning with respect to a particular crime and gains meaning only from the facts of each case. *Orange*, 152 Wn.2d at 818. Accordingly, the "substantial step" in an attempted crime must be

6

given a factual definition to assess whether one crime requires a proof of a fact the other does not. *Orange*, 152 Wn.2d at 818. We examine the facts constituting the "substantial step" to determine whether the defendant's double jeopardy rights were violated. *Borrero*, 161 Wn.2d at 537. "In other words, if the evidence to prove one crime would also completely prove a second crime, the two crimes are the same in law and fact." *State v. Walker*, 143 Wn. App. 880, 886, 181 P.3d 31 (2008).

Our Supreme Court's decision in *Borrero*, 161 Wn.2d at 538, controls here. Borrero was convicted of first degree kidnapping and attempted first degree murder. 161 Wn.2d at 535. He argued, "[E]ssentially, that where the facts comprising the element of 'substantial step' are not identified in the charging instrument, the court should infer that the trier of fact relied on only the facts tending to prove both crimes." *Borrero*, 161 Wn.2d at 538. But the *Borrero* court noted that "this may not be what actually occurred." 161 Wn.2d at 538. The court held that the convictions did not offend double jeopardy because it was "not clear that the kidnapping was a substantial step required to be proved in order to prove attempted murder." *Borrero*, 161 Wn.2d at 539. Different facts supported the two convictions. 161 Wn.2d at 539.

Here, as in *Borrero*, Paz Alvarez argues, "[E]ssentially, that . . . the court should infer that the trier of fact relied on only the facts tending to prove both crimes," that is, the substantial step. 161 Wn.2d at 538. Paz Alvarez focuses on the "substantial step" of him putting ZB on the ground, straddling her, and pulling down her pants. He argues that this act was sufficient to fulfill the elements of both crimes. But he ignores all other evidence in the record and also ignores that because of the different elements of the two crimes, different facts in the record are needed to convict for each. We cannot peer into the mind of the fact finder to determine which

7

facts from the evidence it used as proof of a fact required to prove each crime—or what it determined constituted the substantial step. We can analyze only the elements of each crime and determine whether each requires proof of a fact the other does not. *Freeman*, 153 Wn.2d at 777; *Orange*, 152 Wn.2d at 818. As stated above, that the same conduct may be used to prove each crime is not dispositive. *Freeman*, 153 Wn.2d at 776.

"A person is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another . . . [b]y forcible compulsion." RCW 9A.44.100(1)(a).[4] "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). "'Forcible compulsion' means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(6).

"A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and the perpetrator is at least twenty-

---

[4] Jury Instruction 13 stated, in pertinent part:

> To convict the defendant of the crime of attempted indecent liberties with forcible compulsion, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about June 8, 2018, the defendant did an act that was a substantial step toward the commission of indecent liberties with forcible compulsion;
> (2) That the act was done with the intent to commit indecent liberties with forcible compulsion; and
> (3) That the act occurred in the State of Washington.

CP at 51.

four months older than the victim." RCW 9A.44.073.[5] "'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight." RCW 9A.44.010(1).[6]

Notably, attempted child rape does not require evidence of a substantial step toward sexual gratification within the definition of sexual contact. Likewise, attempted indecent liberties does not require evidence of a substantial step toward sexual intercourse. Nor does it require an age difference between perpetrator and victim. A person may commit the crime of child rape without fulfilling the elements of indecent liberties and vice versa. Moreover, neither child rape nor the attempted rape require force of any kind, much less that sufficient to overcome resistance or a threat. Forcible compulsion stands alone as an element that requires its own proof of a fact that the crime of rape does not. Accordingly, the plain language of the statutes shows that the legislature intended to impose separate punishments for these crimes.

---

[5] Jury Instruction 16 stated, in pertinent part:

> To convict the defendant of the crime of attempted rape of a child in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about June 8, 2018, the defendant did an act that was a substantial step toward the commission of rape of a child in the first degree;
> (2) That the act was done with the intent to commit rape of a child in the first degree; and
> (3) That the act occurred in the State of Washington.

CP at 54.

[6] Jury Instruction 15 stated:

> Sexual intercourse means that the sexual organ of the male entered and penetrated the sexual organ of the female and occurs upon any penetration, however slight or any penetration of the vagina or anus however slight, by an object, including a body part, when committed on one person by another, whether such persons are of the same or opposite sex.

CP at 53.

That the fact finder could have relied on the same conduct to prove each crime is not dispositive. Here there is ample evidence in the record from which the fact finder could determine forcible compulsion: Paz Alvarez's picking up and "bear hug[ging]" ZB, putting ZB on the floor, forcibly removing her clothes, and JB having to push Paz Alvarez off of her. VRP at 121-24. That these acts may have contributed a substantial step toward attempted rape does not matter; they are evidence that is necessary for proof of a fact that rape does not require. Thus, the principles of double jeopardy are not violated. Accordingly, we hold that a conviction for both attempted first degree rape and attempted indecent liberties with forcible compulsion does not violate the prohibition against double jeopardy. [7]

## II.  PROSECUTORIAL MISCONDUCT

Next, Paz Alvarez argues that flagrant and ill-intentioned prosecutorial misconduct denied him a right to a fair trial. Paz Alvarez bases his argument on an incorrect report of proceedings and his argument fails.

We review prosecutorial misconduct claims for an abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). "The defendant bears the burden of showing that the

---

[7] Paz Alvarez also cites *State v. Mutch*, 171 Wn.2d 646, 664, 254 P.3d 803 (2011), to argue that the trial court was required to instruct the jury that the State was not seeking to impose multiple punishments for the same crime. But that is not the rule. The *Mutch* court explained that looking to jury instructions to determine if a flaw created double jeopardy was a "limited review" that the court disapproved of. 171 Wn.2d at 664. "[T]his case does not provide an occasion for us to determine the exact review process for double jeopardy claims arising out of jury instructions, only that we follow the precedent of our other double jeopardy cases, which instructs us to look at all the facts of the case." *Mutch*, 171 Wn.2d at 665. Moreover, jury instructions admonishing the jury against treating multiple punishments for the same offense applies when the defendant is charged with multiple counts of the same crime, not separate crimes. *State v. Borsheim*, 140 Wn. App. 357, 366-67, 165 P.3d 417 (2007).

comments were improper and prejudicial." *Lindsay*, 180 Wn.2d at 430. Paz Alvarez cannot do so here.

> During closing arguments, the prosecutor stated:
>
> So, we're not supposed to believe [JB] because he was traumatized. That means that he did not see the defendant pull the pants and underwear off his child? *That's what he's saying?* That because he was traumatized he didn't see this? Or that he's making it up that it happened? No. It happened. *I don't care whether he was traumatized or not, it happened*. He watched it happen.

VRP at 218, as corrected Feb. 5, 2021 (emphasis added).

However, the original Verbatim Report of Proceedings that was submitted to us in June 2020 reports the prosecutor as stating, "I care whether he was traumatized or not." In February 2021, an updated VRP was submitted correcting page 218 to read that the prosecutor stated, "I *don't* care . . ." Paz Alvarez filed his opening brief in November 2020. In it, he argues that the prosecutor saying "*I care* whether he was traumatized or not" was intended to inflame the passions and prejudices of the jury and inserts the prosecutor's personal feelings into the purview of the jury. Br. of Appellant at 18-19. But as the corrected record shows, this is not what the prosecutor said. Indeed, the prosecutor's statement (as corrected) takes the prosecutor's feelings out of the matter entirely. Paz Alvarez did not address the issue in his reply brief (filed March 2021). Accordingly, Paz Alvarez cannot show prejudice or improper comment and his argument fails.

III. COMMUNITY CUSTODY CONDITIONS

Paz Alvarez argues that the trial court erred when it entered three of his community custody conditions. He argues that community custody conditions 5, 10, and 18 are not crime-related, that condition 5 unconstitutionally compels speech, and that conditions 5, 10, and 18 are unconstitutionally vague.[8] We hold that condition 5 is unconstitutionally vague but we disagree with his remaining arguments.

We review community custody conditions for an abuse of discretion. *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). The trial court abuses its discretion where the condition it imposes is either unconstitutional or manifestly unreasonable. *Nguyen*, 191 Wn.2d at 678. "Imposing an unconstitutional condition will always be 'manifestly unreasonable.'" *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). "This court does not presume that community custody conditions are constitutional." 191 Wn. App. 644.

The Sentencing Reform Act (SRA), chapter 9.94A RCW, governs community custody conditions. RCW 9.94A.703. Trial courts are authorized to impose discretionary community custody conditions during sentencing. RCW 9.94A.703(3). This authority includes requiring offenders to participate in "crime related treatment or counseling services; . . . rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of

---

[8] The State argues that because Paz Alvarez challenges his community custody conditions for the first time on appeal, we should not consider his arguments. However, as our Supreme Court has noted, "Conditions of community custody may be challenged for the first time on appeal." *State v. Wallmuller*, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

the offense, the offender's risk of reoffending, or the safety of the community; . . . [and] [c]omply with any crime-related prohibitions."  RCW 9.94A.703(3)(c), (d), (f).

A.      *Condition 5: Disclosing Sex Offender Status Prior To Any Sexual Contact*

Paz Alvarez argues that the trial court erred when it imposed community custody condition 5, which states he must: "Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship.  Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such."  CP at 99.  He argues that the condition unconstitutionally compels speech, infringes on his right to privacy, and is not crime-related.  He further argues that the condition requiring his treatment provider to approve of sexual contact is not crime-related, is unconstitutionally vague, and consequently barred.  We hold that the condition is unconstitutionally vague.  The remainder of Paz Alvarez's arguments fail.

1. *The Order Requiring Paz Alvarez To Disclose His Sex Offender Status is Crime-Related and Not Unconstitutionally Overbroad*

Paz Alvarez argues that the trial court exceeded the constitutional limits on its sentencing discretion when it required Paz Alvarez to disclose his sex offender status prior to any sexual contact.  He argues that the condition impermissibly infringes on his right not to speak under the First Amendment, his right to privacy under the Fourteenth Amendment, and is overbroad.  We disagree.

The right not to speak is protected by the First Amendment to the United States Constitution and article I, section 5 of the Washington Constitution.  However, "'an offender's usual constitutional rights during community placement are subject to SRA-authorized infringements.'"  *State v. Lee*, 12 Wn. App. 2d 378, 402, 460 P.3d 701, *review denied*, 195

Wn.2d 1032, 468 P.3d 622 (2020) (quoting *State v. Hearn*, 131 Wn. App. 601, 607, 128 P.3d 139 (2006)). Moreover, parolees have reduced rights. *See Lee*, 12 Wn. App. 2d at 403. Accordingly, because the SRA authorizes crime-related conditions (RCW 9.94A.703), a condition placed on an offender does not violate a right not to speak if the required statement is crime-related and if it is narrowly tailored to further the State's legitimate interest. *Lee*, 12 Wn. App. 2d at 402; *State v. Padilla*, 190 Wn.2d 672, 683, 416 P.3d 712 (2018).

Likewise, a community custody condition is not unconstitutionally overbroad if it is crime-related. *Lee*, 12 Wn. App. 2d at 401; *State v. McKee*, 141 Wn. App. 22, 37, 167 P.3d 575 (2007). "A crime-related prohibition must relate 'to the circumstances of the crime for which the offender has been convicted.'" *Lee*, 12 Wn. App. 2d at 401 (quoting RCW 9.94A.030(10)). Thus, where evidence in the record connects the crime to the community custody condition, the condition is crime-related and not unconstitutionally overbroad. *Lee*, 12 Wn. App. 2d at 401-02; *Irwin*, 191 Wn. App. at 656-57.

In *In re Personal Restraint of Sickels*, 14 Wn. App. 2d 51, 56, 469 P.3d 322 (2020) (published in part), the defendant was convicted of second degree attempted rape of a child. He challenged a community custody condition identical to condition 5 here; even the numbering was identical. *Compare* CP at 99 *with Sickels*, 14 Wn. App. 2d at 60. The *Sickels* court held that condition 5 was crime-related. 14 Wn. App. 2d at 61. The court explained:

> We are persuaded that the condition is crime-related in this case by *State v. Sadler*, an unpublished Division One decision in which the panel reasoned persuasively that when a companion condition requires the offender to obtain a sexual deviancy evaluation and comply with treatment recommendations, a requirement for treatment provider approval of sexual contact is crime-related. . . .
>
> . . . Reasonably read, condition 5 does not require Mr. Sickels to get contact-by-contact approval for sexual contact for life. Reasonably read, it requires that he not

> have sexual contact "until" his treatment provider is satisfied that sexual contact does not put others at risk. It is not a total ban on protected activity and can be challenged as applied in the event the treatment provider's approval is exercised unreasonably. When, as here, the condition is imposed on a sex offender along with a requirement for early evaluation it is crime-related.

*Sickels*, 14 Wn. App. 2d at 62-63 (citing No. 73525-0-I, slip op. at 14-15, 2017 WL 1137116 (Wash. Ct. App. Mar. 27, 2017) (unpublished)).[9]

The same is true here. Paz Alvarez was convicted of a substantively similar crime to Sickels's: attempted first degree rape of a child and attempted indecent liberties. Community custody condition 5 protects the community from, and establishes treatment requirements for, Paz Alvarez the same way it did in *Sickels*. Accordingly, condition 5 is crime-related. Because the condition is crime-related, it is an acceptable infringement on Paz Alvarez's rights under the SRA. *Lee*, 12 Wn. App. 2d at 402.

Paz Alvarez appears to argue that requiring him to divulge his sex offender status violates First Amendment protections against compelled speech and Fourteenth Amendment privacy protections by analogizing such disclosure to laws from other states that mandated disclosure of an individual's HIV (human immunodeficiency virus) status. *See, e.g.*, *State v. Musser*, 721 N.W.2d 734, 743-48 (Iowa 2006). In the cases Paz Alvarez cites, the foreign courts implemented a strict scrutiny review of the statutes compelling the disclosures. *Musser*, 721 N.W.2d at 743-48; *People v. Jensen*, 231 Mich. App. 439, 460-61, 586 N.W.2d 748 (1998). Although Paz Alvarez is correct that a regulation that implicates the First Amendment must be narrowly tailored to the State's legitimate interest, *Padilla*, 190 Wn.2d at 683, his argument fails for two reasons.

---

[9] https://www.courts.wa.gov/opinions/pdf/735250.pdf

First, divulging sex offender status is not the same as divulging having HIV. One is a medical condition, the other is based on a criminal conviction. Second, condition 5 here was narrowly tailored to further a legitimate state interest. It applies only to Paz Alvarez's status as a sex offender and limits his mandated disclosure to just before sexual contact. Additionally, the State has a compelling interest in safeguarding children. *State v. Motherwell*, 114 Wn.2d 353, 365, 788 P.2d 1066 (1990). As the *Sickels* court explained, condition 5 is related to protecting that interest by protecting individuals with whom the offender embarks on a dating or sexual relationship, providing them with knowledge of his potential risk to minors, and making it possible for a CCO or treatment provider to protect those people and associated minors. 14 Wn. App. 2d at 60–61. Thus, community custody condition 5 is crime-related and is not overbroad.

2. *The Order Is Reasonably Related To His Crimes but Is Unconstitutionally Vague*

Paz Alvarez argues that the trial court erred when it imposed the community custody condition requiring him to disclose his sex offender status prior to any sexual contact because the condition is not related to his crimes. He further argues that he will not necessarily have a sexual deviancy treatment provider assigned to him and therefore the condition is unconstitutionally vague. Although we disagree that the condition is not reasonably related to his crime, we agree that it is unconstitutionally vague.

a. *Reasonably Related To the Crimes*

Paz Alvarez argues that "no reasonable relationship exists" between his crimes and the requirements of condition 5 to disclose his sex offender status prior to consensual adult sexual contact. Br. of Appellant at 30. We disagree.

As noted above, condition 5 was analyzed in *Sickels*, 14 Wn. App. 2d at 60-61. The

*Sickels* court explained:

> The first two sentences of condition 5 do not prohibit conduct. . . . They are affirmative conduct requirements governed by RCW 9.94A.703(3)(d), which provides . . . : they must be "reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." The two commands are reasonably related to the safety of the community. They protect individuals whom Mr. Sickels dates or with whom he embarks on a sexual relationship by providing them with knowledge of the potential risk he presents to minors. They make it possible for Mr. Sickels's CCO and treatment provider to take whatever additional steps they might deem appropriate to protect anyone embarking on a dating or sexual relationship with Mr. Sickels.

14 Wn. App. 2d at 60-61. The same reasoning holds true for Paz Alvarez's identical condition 5.

Moreover, as explained above, condition 5 is crime-related.

### b. *Constitutional Vagueness*

Paz Alvarez argues that community custody condition 5 is unconstitutionally vague

because he will not necessarily ever have a sexual deviancy treatment provider. We agree.

"A legal prohibition, such as a community custody condition, is unconstitutionally vague

if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand

the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against

arbitrary enforcement." *Padilla*, 190 Wn.2d at 677.

Here, as noted above, the first two sentences of condition 5 do not prohibit conduct.

*Sickels*, 14 Wn. App. 2d at 60. The third sentence, however, states a conditional prohibition

against sexual contact: Paz Alvarez must get approval from his "treatment provider" before

engaging a partner in sexual contact in a relationship. CP at 99. From the first sentence of the

condition it is clear that this means a "sexual deviancy treatment provider." CP at 99.

In *State v. Bahl*, 164 Wn.2d 739, 761, 193 P.3d 678 (2008), the trial court placed a condition on the offender that he not possess or control "'sexual stimulus material for your particular deviancy.'" 164 Wn.2d at 761. But Bahl was not diagnosed with a deviancy. 164 Wn.2d at 761. Accordingly, our Supreme Court held that the condition was unconstitutionally vague because it could not identify what materials might be sexually stimulating for a deviancy when no deviancy had been diagnosed. *Bahl*, 164 Wn.2d at 761.

The particular facts of this case are similar. Following his conviction, Paz Alvarez received a psychosexual evaluation that concluded he was not deviant. "The purpose of the evaluation was to assess [Paz Alvarez's] potential for sexual deviance and make treatment recommendations if appropriate." Supp. CP at 111. The psychologist determined that his crime did not appear to be "representative of an ongoing pattern of deviant sexual attraction or impulses directed towards prepubescent female children." Supp. CP at 133. The evaluation concluded that Paz Alvarez "does not meet the diagnostic criteria for Pedophilic Disorder." Supp. CP at 133. However, it also stated, "[Paz Alvarez] meets the diagnostic criteria for . . . diagnosis of Delusional Disorder" and that he had an underlying psychotic disorder exacerbated by inhalant abuse. Supp. CP at 131-33.

Because Paz Alvarez already had the sexual deviancy evaluation that determined he did not have a deviant pedophilic disorder, it is unlikely that he will be assigned a sexual deviancy treatment provider on release. As in *Bahl*, here condition 5 is unconstitutionally vague because it mandates Paz Alvarez to require clearance from a sexual deviancy treatment provider when he may never be assigned a sexual deviancy provider. Accordingly, we hold that condition 5 is

unconstitutional as it pertains to Paz Alvarez's circumstances. We order the trial court to rewrite

Condition 5 to clarify the condition consistent with the findings of the psychosexual report.

B.      *Condition 10: Prohibition on Possession of Sexually Explicit Material*

Next, Paz Alvarez argues that community custody condition 10 is not crime-related and is

unconstitutionally vague. Condition 10 states:

> Do not purchase, possess, use, access or view any sexually explicit material that are intended for sexual gratification. This includes, but is not limited to, material which shows genitals, bodily excretory behavior that appears to be sexual in nature, physical stimulation of unclothed genitals, masturbation, sodomy (i.e., bestiality, or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of human genitals. *Works of art or of anthropological significance are not considered sexually explicit material unless given prior approval by your sexual deviancy provider.*

CP at 99 (emphasis added). Paz Alvarez first argues that the third sentence of condition 10 is

nonsensical and renders the entire passage unconstitutionally vague. He then argues that the

prohibition on sexually explicit material is not related to his crimes. Although the State concedes

that the third sentence is flawed, and we accept that concession, we disagree with Paz Alvarez

that it renders the whole condition unconstitutionally vague. We also disagree with Paz Alvarez

that condition 10 is not crime-related.

1. *Condition 10 Is Not Unconstitutionally Vague*

Turning first to the unconstitutional vagueness argument, as stated above, "[a] legal

prohibition, such as a community custody condition, is unconstitutionally vague if (1) it does not

sufficiently define the proscribed conduct so an ordinary person can understand the prohibition

or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary

enforcement." *Padilla*, 190 Wn.2d at 677.

19

In *State v. Hai Minh Nguyen*, 191 Wn.2d at 679, our Supreme Court analyzed a community custody condition similar to condition 10 imposed here. There the trial court imposed a prohibition on "sexually explicit material as defined by RCW 9.68.130." *Nguyen*, 191 Wn.2d at 679. RCW 9.68.130(2) has substantively similar wording to condition 10 here, and defines "sexually explicit material" to include:

> [A]ny pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

*See also Nguyen*, 191 Wn.2d at 680. The *Nguyen* court explicitly held that the term "sexually explicit material" is not unconstitutionally vague. *Nguyen*, 191 Wn.2d at 681.

Here, the final sentence in condition 10 contains the phrase "unless given prior approval by your sexual deviancy provider" appended to the end of the sentence excepting works of art or anthropological significance from the definition of "sexually explicit material." CP at 99. This phrase makes no sense in the context of the condition. Moreover, as explained above, Paz Alvarez may never be assigned a sexual deviancy treatment provider. However, the remainder of the condition is not rendered unconstitutionally vague because of this peculiar wording. As explained above, the term "sexually explicit material" alone is constitutional and, as the *Nguyen* court noted, "persons of ordinary intelligence can discern 'sexually explicit material' from works of art and anthropological significance." 191 Wn.2d at 680-81. Accordingly, although we order the trial court to strike or revise the final sentence of condition 10, we hold that the final, erroneous phrase does not render the entire condition unconstitutionally vague.

*2. Conditions Limiting Access To "Sexually Explicit Materials" Are Crime-Related*

Next, Paz Alvarez argues that condition 10 is not crime-related because possessing sexually explicit material is not factually connected to his sex crime. But the *Nguyen* court specifically rejected this argument. 191 Wn.2d at 686.

Nguyen was convicted of multiple sex crimes, including first degree child rape. 191 Wn.2d at 675. He argued that the condition prohibiting him from possessing or viewing "sexually explicit materials" was not crime-related. *Nguyen*, 191 Wn.2d at 683. Our Supreme Court disagreed and held the prohibition was crime-related, explaining:

> Nguyen committed sex crimes and, in doing so, established his inability to control his sexual urges. It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from accessing "sexually explicit materials," the only purpose of which is to invoke sexual stimulation.

*Nguyen*, 191 Wn.2d at 686. This precedent is binding here.

Paz Alvarez argues that we should not apply *Nguyen*, calling it a "prudish, one-size-fits-all conclusion." Br. of Appellant at 36. Instead, he argues that *Padilla*, 190 Wn.2d at 678, should apply.[10] We disagree.

In *Padilla*, our Supreme Court held that a community custody condition barring the possession of "pornographic materials" was unconstitutionally vague. 190 Wn.2d at 678. Paz Alvarez argues that it is "impossible to reconcile" *Nguyen* and *Padilla*, and states that our "Supreme Court has some problems with basic rules and analysis." Br. of Appellant at 35. He is

---

[10] Paz Alvarez also cites a Division Three case, *State v. Johnson*, 4 Wn. App. 2d 352, 360, 421 P.3d 969 (2018), where the court held certain conditions were not crime-related. But the conditions there contained different wording. *Johnson*, 4 Wn. App. 2d at 356. Moreover, *Johnson* was decided before *Nguyen*.

mistaken. The *Nguyen* court explicitly distinguished the wording in the *Padilla* condition, explaining:

> [T]his case does not concern the ascertainability of "pornographic material" but, rather, the ascertainability of "sexually explicit material." In *Bahl*, we drew a distinction between the two.
>
> Unlike "pornographic material," we held that the term "sexually explicit material" was not unconstitutionally vague. *Bahl*, 164 Wn.2d at 760, 193 P.3d 678. Specifically, we held "[w]hen all of the challenged terms, with their dictionary definitions, are considered together, we believe the condition is sufficiently clear." *Id.* at 759, 193 P.3d 678.

*Nguyen*, 191 Wn.2d at 680. Moreover, *Padilla* is distinguishable because there the State conceded that the record was inadequate to determine whether the pornography prohibition was sufficiently crime-related. 190 Wn.2d at 683.

Here, as in *Nguyen*, the condition is one of "sexually explicit material" and not one based on "pornographic material." Accordingly, *Nguyen* applies and Paz Alvarez's argument fails.

C.      *Condition 18: Barred From Areas Where Children's Activities Regularly Occur or Are Occurring*

Paz Alvarez next argues that the trial court erred when it imposed community custody condition 18, which requires that Paz Alvarez to:

> Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO.

CP at 100. He argues that the condition is impermissibly vague and not crime-related. We disagree.

A condition must provide fair notice but need not describe every situation under which a defendant should avoid a location. *State v. Wallmuller*, 194 Wn.2d 234, 242, 449 P.3d 619

(2019). "A community custody condition 'is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" *Nguyen*, 191 Wn.2d at 679 (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

In *Wallmuller*, our Supreme Court held that conditions containing a non-exhaustive list of prohibited areas was constitutional because the list illustrates the scope of the restriction in a way that an ordinary person could understand. 194 Wn.2d at 244-45. The upheld condition stated, "The defendant shall not loiter in nor frequent places where children congregate such as parks, video arcades, campgrounds, and shopping malls." *Wallmuller*, 194 Wn.2d at 237.

If anything, the condition here is more specific than that in *Wallmuller*, containing more locations and activities. We therefore conclude that the condition is not unconstitutionally vague because an ordinary person could understand what it prohibits.

Paz Alvarez argues that in the first sentence of condition 18, "Stay out of areas where children's activities regularly occur or are occurring," the "or" is disjunctive, and therefore the condition is vague. Br. of Appellant at 40. He argues that the "or" makes it impossible to determine whether he must stay out of parks used for youth activities, regardless of whether children are present, or if the "are occurring" language controls. Br. of Appellant at 40-41. But Paz Alvarez unnecessarily muddies the semantic waters.

As stated above, the *Nguyen* court made it clear that a condition is not unconstitutionally vague "'merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'" 191 Wn.2d at 679. Merely because Paz Alvarez cannot predict with complete certainty the exact point at which his entry to certain

location could be barred does not make the condition vague.  Moreover, "[t]here are doubtless a number of ways that the challenged community condition . . . could be drafted, but reading this condition *in a commonsense way* and in the context of the other conditions, an ordinary person can understand the scope of the prohibited conduct." *Wallmuller*, 194 Wn.2d at 245 (emphasis added).  A commonsense reading here makes it clear that Paz Alvarez is to stay away from locations that children frequent, have children at them, or are child-centric.

Paz Alvarez then argues that the condition is not crime-related.  Br. of Appellant at 41-42.  He asks and answers the hypothetical: "how does a winter jog past a park that hosts youth sailing classes in the summer relate to a crime against a minor, or avoidance of contact with minors?  The answer is that it does not."  Br. of Appellant at 41-42.  But here again Paz Alvarez is mistaken.  Paz Alvarez's hypothetical runs afoul of the logic in *Nguyen*: Paz Alvarez "committed sex crimes and, in doing so, established his inability to control his sexual urges.  It is both logical and reasonable to conclude that a convicted person who cannot suppress sexual urges should be prohibited from" certain conduct.  191 Wn.2d at 686.  Here, that conduct is going to areas where it is likely he will encounter children that, in turn, could trigger his sexual urges.  The court need not "'describe every possible permutation, or . . . spell out every last, self-evident detail.'"  *Wallmuller*, 194 Wn.2d at 242 (quoting *United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008)).  Accordingly, condition 18 is crime-related.

IV.  COMMUNITY CUSTODY SUPERVISION FEES

Finally, Paz Alvarez argues that the trial court erred when it imposed DOC supervision fees after stating that it would impose only mandatory LFOs.  Paz Alvarez argues that DOC supervision fees are discretionary LFOs and should be stricken.  We agree.

24

DOC supervision fees are waivable by the trial court and are discretionary LFOs. *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018). RCW 9.94A.703(2) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: (d) Pay supervision fees as determined by the department."

In the Division One case *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 *review denied*, 195 Wn.2d 1022, 464 P.3d 198 (2020), the defendant was found indigent and the trial court stated its intent to impose only mandatory LFOs, stating it would "simply order $500 victim penalty assessment, which is still truly mandatory, as well as restitution, if any." (Internal quotation marks omitted.) Dillon's judgment and sentence stated he was subject to "supervision fees as determined by DOC." 12 Wn. App. 2d at 152 (internal quotation marks omitted). Division One held: "From this record, it appears that the trial court intended to waive all discretionary LFOs, but inadvertently imposed supervision fees because of its location in the judgment and sentence." *Dillon*, 12 Wn. App. 2d at 152.

The same thing happened here. The trial court stated,

> With regard to legal financial obligations, based upon the presentence investigation the Court's going to find that Mr. Paz Alvarez does not have the present ability, and in all likelihood, near future ability to meet his legal financial obligations, will only impose the mandatory $500 crime victims fee, the $100 DNA fee.

VRP at 254. The DOC fees were included in the judgment and sentence form. From this record, as in *Dillon*, we conclude that the trial court intended to waive the fee but inadvertently imposed it.

The State argues that we should affirm the DOC supervision fee under *State v. Starr*, 16 Wn. App. 2d 106, 108-109, 479 P.3d 1209 (2021). There, the trial court stated it was imposing

"community custody, the crime victim assessment. The defendant is otherwise indigent. So no other costs will be assessed." *Starr*, 16 Wn. App. 2d at 108 (internal quotation marks omitted). The trial court then imposed DOC supervision fees in the judgment and sentence form. *Starr*, 16 Wn. App. 2d at 108. On appeal, we held that the DOC supervision fee was not a "cost" under RCW 10.01.160(2) and therefore the trial court did not err when it imposed those fees despite Starr's indigency status. *Starr*, 16 Wn. App. 2d at 109.

But this case is distinguishable for two reasons. First, the trial court here mentioned nothing about "costs." Second, the court's statement here was more similar to that in *Dillon* and therefore *Dillon* is more apt: it is apparent the trial court intended to waive discretionary LFOs. Accordingly, we hold that the trial court erred when it imposed the DOC supervision fee in the judgment and sentence.

## CONCLUSION

We hold that Paz Alvarez's convictions for attempted first degree child rape and attempted first degree indecent liberties by forcible compulsion do not violate double jeopardy. We conclude that there was no prosecutorial misconduct because the corrected record reveals an error in the original report of proceedings and the prosecutor did not make the statement Paz Alvarez claims was improper. We further hold that community custody condition 5 is unconstitutionally vague but that the remaining community custody conditions were crime-related and constitutionally sound. Because of the unconstitutionality of condition 5 and the error in the final sentence of condition 10, we remand those conditions to the trial court for correction. Finally, we hold that the trial court erred when it imposed the Department of

26

No. 54548-9-II

Corrections supervision fee in the judgment and sentence. Accordingly, we affirm in part and remand in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Cruser, J.

Veljacic, J.